Richardson *v.* White.

## RICHARDSON *et al. v.* WHITE *et al.*

A PURCHASER of real property, pending suit affecting the title to it, is not bound by the judgment unless notice of *lis pendens* be filed with the County Recorder before the purchase.

Our statute (Pr. Act, sec. 27) changes the common law rule upon this subject.

*Query :* Whether actual notice of *lis pendens* would be equivalent to notice filed with the Recorder ?

Our statute does not give any new rights to the plaintiff, but limits rights which he had before. It simply adds to the common law rule a single term, to wit : to require for constructive notice, not only a suit, but filing notice of it ; and there is no distinction under the statute between different kinds of interest in or titles to real estate.

Where notice of *lis pendens* was not filed, plaintiff cannot successfully set up that notice would have done no good to the purchaser, because he could make no defense or no better defense than the vendor. The object of the notice is to give the opportunity of defense, and also to notify third persons of the litigation.

APPEAL from the Fourth District Court.

Richardson, one of the plaintiffs, began suit in October, 1855, in the Superior Court of San Francisco, against John Bigler, Charles Hempstead and Samuel Bell, *ex officio* the Board of Land Commissioners for the State of California, Jacob S. Cohen, Clerk and Agent of said Board, A. J. Butler, A. A. Selover and Richard Sinton, alleging, in substance, that on the twenty-sixth of October, 1854, said Board, through Selover & Sinton, as auctioneers, sold to the plaintiff the State's interest in one hundred and thirty-two

water lots, in blocks sixteen, twenty-three, twenty-four and thirty, within the water line front and on the south beach, in San Francisco, under the Act of May 1st, 1853, for the sum of $2,640 ; that he paid on said purchase on the day of sale, two hundred and seventy-two dollars, and on the twentieth of January, 1855, six hundred and fifty-seven dollars ; that at the expiration of the three months' credit allowed by law for payment of the balance, he tendered said auctioneers and Board $1,711, together with the commissions of the former of one-half of one per cent., and demanded a deed which the Board had made out for plaintiff; but that said auctioneers and Board demanded, in addition, $1,980 as the cost of preparing the deed — being at the rate of fifteen dollars for each lot ; that plaintiff refused to pay said $1,980 ; and that subsequently, on the tenth of October, 1845, Bigler, Denver and Bell, the then Board of Land Commissioners, under the Act of May 1st, 1855, authorizing a sale of all the property unsold under the Act of 1853, by Selover & Sinton, as auctioneers, resold said one hundred and thirty-two lots, and that defendant, A. J. Butler, became the purchaser for $1,320 ; that this refusal to accept plaintiffs' money and give him a deed, and the sale to Butler, who was aware of the premises, are frauds on plaintiff.   Other circumstances of fraud are charged, and the prayer is that the sale to Butler be declared void, that the Board be enjoined from executing a deed to him, or if executed, that he be enjoined from selling, that the deed be delivered up and canceled, and the Board ordered to make a deed to plaintiff.   Butler made default.   The other defendants answered, and after trial a decree was made in accordance with the prayer of the complaint.

The present suit is by Richardson and one Webb, against the same defendants, with the addition of Horace White, and the complaint sets forth the proceedings had in the previous suit.   Defendant Bigler made default.   The other defendants, except White, demurred, and, the demurrer being overruled, failed to answer. White answered.

The Court below found that plaintiff began the suit above named and prosecuted it to final decree in his favor; and further, that, after the commencement of said action, the defendants, Bigler,

Hempstead and Bell, as State Commissioners, made and delivered to the defendant Horace White, a deed bearing date the seventh day of November, 1855, purporting to convey to White all the right, title and interest of the State of California in and to the lots of land described in the complaint herein, but that they did not make any sale of said property after the first sale made to plaintiff Richardson, excepting only the pretended sale of October 10th, 1855, and that said White does in fact pretend to hold and claim the said property under said deed by and under said sale of October 10th, 1855, and through said Butler ; that, in pursuance of the decree in said action, John B. Weller, Governor of the State of California, Ferris Forman, Secretary of State, and G. W. Whitman, Controller of State, *ex officio* composing the Board of California Land Commissioners, successors to the said Bigler, Hempstead and Bell, did on the eighth day of September, 1858, make, execute and deliver to the plaintiff Richardson their deed of conveyance, conveying to said Richardson all the right, title and interest of the State of California in and to the said lots of land first in said complaint described ; and thereafter, on the fifth day of November, 1858, the plaintiff Richardson sold and conveyed the same to plaintiff Titus Webb, by deed of conveyance duly executed and recorded ; that plaintiff Webb has demanded of said White to deliver up to him said deed to be canceled, and that White refuses.

Decree that the deed to White is null and void as against plaintiff, and that it be delivered up to be canceled, with injunction prohibiting White from conveying the lots, etc.   He appeals.

*Heydenfeldt*, for Appellant.

The judgment in *Richardson* v. *Bigler et als.* does not conclude White, because he was not a party.

*Whitcomb, Pringle & Felton*, for Respondents.

This is a "bill to carry a decree into execution." (Daniell's Chancery Pl. and Pr. 1689, and cases cited.)

The title of White was concluded by the proceedings in the former suit, because it became vested in him during the pendency of that suit.   A purchaser *pendente lite* takes subject to the litiga-

Richardson v. White.

tion.   (*Debell* v. *Foxworthy's Heirs*, 9 B. Monroe, 228 ; *Secombe* v. *Steele*, 20 How. 105 ; *Greene* v. *White*, 7 Blackf. 242 ; *Boker* v. *Pierson*, 5 Mich. 461.)

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

This bill was filed to carry into execution a decree, and give effect to proceedings touching certain real estate in San Francisco. The decree, thus sought to be enforced, and the operation of which is sought to be extended to the defendant White, was had in a suit in which this complainant was plaintiff, and Bigler, Butler *et al.* were defendants.   Plaintiff obtained a decree in the last mentioned suit, declaring void a certain sale of real estate by State Commissioners to one Butler.   The bill in the present case avers that the defendant White claims to hold this property by virtue of a deed executed by the Commissioners shortly after the commencement of the suit of plaintiff against Bigler, Butler and others.   It avers that this conveyance was made without any sale by the Commissioners to White ; but that White claims only by assignment, or pretended assignment, of the right of Butler, to whom the property was struck off at the sale by the Commissioners, in October, 1855, and which sale was declared void in the former suit.   The answer sets up that the defendant got Butler to buy in the property for him, as his agent, and that, in pursuance of the arrangement with Butler, he paid the purchase money and received the deed.

The theory of the bill is, that as the deed of the defendant, White, was made *pendente lite*, the decree as well forecloses his claim as the claim of Butler.   This proceeding is to carry a decree into execution, not to exhibit a ground for obtaining a decree, but merely to give operation to a decree already obtained, and to make effectual a relief already adjudged.   This supposes that the merits of the controversy are already foreclosed, and that it only remains to apply a remedy, already adjudged between the original parties, to a new party really, though not nominally, bound by the previous adjudication.   This supplementary process in aid of the previous decree supposes, of course, that that decree is already equitably binding, though not formally entered, against the party afterwards

8

proceeded against. To have that effect, the judgment must either be against the party by name or some one who legally represents his interest. It is not always necessary that a party should appear to be such on the record, in order to be bound by the decree. An exception is made at common law in the case of purchasers or assignees *pendente lite* of the subject of the controversy. By the English rule, such persons were mere volunteers and intruders, and were bound by the results of the controversy. And if this case were tested by these rules, it might be a question, if White were really the purchaser at the time of the filing of the bill, though purchasing in the name or by the bid of Butler, and receiving from the Commissioners the deed after the suit, whether he would be considered as a *pendente lite* purchaser from Butler, and bound by the judgment against Butler. But it is not necessary to consider this question, either as to the facts or the law in connection with the matter; for another point is made, which we see no way of surmounting, and that is, that our statute (Wood's Dig. 170, sec. 27) qualifies the common law doctrine in reference to purchases *pendente lite*, and denies the effect just attributed to such a purchase. The section is as follows:

" In an action affecting the title to real property, the plaintiff, at the time of filing the complaint, or at any time afterwards, may file with the Recorder of the county in which the property is situated a notice of the pendency of the action, containing the names of the parties, the object of the action, and a description of the property in that county affected thereby. From the time of filing only shall the pendency of the action be constructive notice to a purchaser or incumbrancer of the property affected thereby."

The general rule is, that one not a party to a suit is not affected by the judgment; the exception at common law is, that a *pendente lite* purchaser, though not a party, was so affected; the qualification of the doctrine made by our statute is, that such purchaser is not affected unless notice of such *lis pendens* be filed with the Recorder. It is not necessary to consider whether actual notice would not supply the place of this constructive notice, for the bill makes no such case. The common law doctrine of *lis pendens* rests upon the fiction of notice to all persons of the pendency of suits, and to rem-

Richardson v. White.

edy the evils which might grow out of the transfer of apparent legal titles or rights of action to persons ignorant of litigation respecting them, this provision was inserted in our statute. We do not think that the distinction drawn by the ingenious argument of the respondent, between the different kinds of interest in or titles to real estate, can be maintained. We consider our statute, not as giving new rights to the plaintiff, but as a limitation upon the rights which he had before. If no *lis pendens* be filed, the party acquiring an interest or claim *pendente lite* stands wholly unaffected by the suit. If he has any rights which, but for the suit, he could set up, he may still maintain those rights. But he would not be foreclosed by a judgment against the party to the suit from whom he obtained his assignment. The object of the statute evidently was to add to the common law rule a single term, to wit: to require for constructive notice, not only a suit, but filing a notice of it; so that this rule is as if it read: "The commencement of a suit and the filing of notice of it are constructive notice to all the world of the action, and purchasers or assignees, afterwards becoming such, are mere volunteers, and bound by the judgment."

It is not important in this connection whether White has any title, or can set up any; for the question, in the technical view in which we are considering it, is not whether he has or had any title to the property, but whether the title has already been adjudged against him. It is true, the respondent urges that, in such cases as this, the constructive notice could do no good to the assignee, for he could make no defense or better defense than the assignor; but if this is conceded, still the answer is, that the very object of the notice is to give the opportunity of defense, and that it cannot be judicially concluded whether a party may make a defense or not until he has had an opportunity. Besides, another object of the statute was to give notice in this way of litigation, that third persons might not purchase except advisedly. It might often happen that the nominal defendant, after selling, might feel no interest in litigating, while the real defendant, to whom he sold, would be subject to a judgment of which he had no notice, and to which no defense was made by the original parties. The provision of the statute is simple and easy of observance, and we think we should not

be giving its plain meaning to it if we held that purchasers were charged with constructive notice when its provisions were not pursued.

Judgment reversed, and cause remanded for a new trial.